UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MATHEW DESPINS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 24-cv-12255-ADB |
| KNOWLEDGE AI, INC., JOONHEE | * | |
| WON, and BRIAN SCHREIBER, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Mathew Despins brings this action against Defendants Knowledge AI, Inc., its CEO, Joonhee Won, and its COO, Brian Schreiber, asserting four causes of action arising out of Defendants' alleged (1) failure to pay Despins wages according to the terms of his employment contract and (2) subsequent retaliation against Despins for demanding those wages. See [ECF No. 1-2 ("Compl.") ¶¶ 35–62]. Before the Court is Defendants' motion for summary judgment, [ECF No. 39]. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I.      **BACKGROUND**

      A.      **Facts**[1]

The following facts are undisputed except where otherwise noted.

On May 19, 2024, Despins began working for Knowledge AI as a sales director, pursuant to an offer letter signed the same day. [ECF No. 47 ¶¶ 1, 3]. The offer letter established an at-will employment relationship between Despins and Knowledge AI, pursuant to which Despins would earn a base salary of $100,000 per year, a monthly commission, and a $4,000 monthly draw against that commission for the first year. [Id. ¶¶ 4–8]. Despins was responsible for "selling artificial intelligence-based software to schools." [Id. ¶ 11]. Between May 21, 2024, and May 31, 2024, Despins worked with a Knowledge AI employee, Nancy DeCicco, to complete payroll-related onboarding. [Id. ¶¶ 11–17]. On May 31, 2024, he provided the documents required to support his I-9 filing, and in the same email asked DeCicco when his first paycheck would be deposited. [Id. ¶¶ 18–19]. He also texted Schreiber to ask when his paycheck would come. [Id. ¶ 20].

On June 3, 2024, Despins again reached out to DeCicco to ask what the pay schedule was. [ECF No. 47 ¶ 21]. She informed him that "[t]he pay cycle is monthly and payable on the last day of the month," [id. (alteration in original)], with paychecks "normally deposited on the last day of each month," [id. ¶ 22]. Despins claims that Schreiber previously told him paychecks would be issued biweekly. [Id. ¶ 24]. On June 4, 2024, Despins contacted Schreiber to request

---

[1] Though the parties apparently intended to include exhibits pursuant to a combined table of contents, see [ECF No. 47-6 at 1], no exhibits were appended to Defendants' summary judgment motion. See [ECF Nos. 39–42]. Accordingly, the Court resolved the motion in reliance on Despins's responses to Defendants' statement of material facts, [ECF No. 47], and the exhibits appended thereto.

clarity on the pay schedule, and Schreiber said that payments would be monthly, though he hoped to increase the frequency to twice per month in the future.  [Id. ¶ 25].  On June 10, 2024, Won emailed Schreiber and Despins to tell them that due to "issues with funding," Despins's paycheck had been delayed, but money would be transferred to him the following day.  [Id. ¶ 27].  On June 12, 2024, and June 14, 2024, Despins followed up again to request payment, see [id. ¶¶ 28–29].  On June 17, 2024, Despins was terminated.  [Id. ¶ 77].

The record is scant concerning the work Despins did for Knowledge AI between May 19, when he was hired, and June 17, when he was terminated.  The projects that Despins told Schreiber he was working on included a "[slide] deck," a "word doc," and "research on LinkedIn," [ECF No. 47 ¶ 30], as well as scheduling appointments and "demos" and creating a webinar, all with the goal of "clos[ing] [deals] in [A]ugust," [id. ¶ 31].  On May 28, 2024, Despins emailed Schreiber a list of prospects, [id. ¶ 35], and on June 7, he told Schreiber that he had called roughly half of the list, [id. ¶¶ 42–43].  On June 11, 2024, Despins told Schreiber that he continued to make calls.  [Id. ¶ 46].  Despins also created a voice recording for a webinar presentation, [id. ¶ 50], but the recording was not synchronized with the presentation, and because of time constraints, another employee ultimately finished the assignment, [id. ¶¶ 51–52].  Apart from his communication to Schreiber and the voice recording, Despins does not recall producing any documentation of his work.  [Id. ¶¶ 37, 39–41, 43–44, 46–48].  On June 17, 2024, Schreiber informed Despins over email that he had been terminated for failure to provide documentation of progress in his customer outreach.  [Id. ¶ 77].

One day later, on June 18, 2024, Despins was paid $3,110.72 for his work in the month of May.  [ECF No. 47 ¶ 82].  On June 24, 2024, Despins was paid $5,983.44.  [Id. ¶ 83].  Finally, on October 17, 2024, Defendants attempted to pay Despins $15,742.77, representing "the

3

amount owed multiplied by three to account for the Massachusetts Wage Act," [id. ¶ 84], but Despins's counsel "inadvertently shredded the check," [id. ¶ 85], and Despins was finally paid $15,717 in January 2025, [id. ¶ 89], which "had taxes deducted as required by [f]ederal and Massachusetts [s]tate [l]aw," [id. ¶ 88].

### B.    Procedural History

On July 2, 2024, Despins initiated this action in Massachusetts Superior Court, asserting breach of contract, breach of implied covenant of good faith and fair dealing, wrongful termination, and violation of Massachusetts General Laws chapters 149 and 151.  [ECF No. 1-2]. Defendants removed on August 30, 2024, see [ECF No. 1], and answered on September 5, 2024, [ECF No. 6].  On December 17, 2024, Despins moved for judgment on the pleadings, [ECF No. 17], which Defendants opposed on February 21, 2025, [ECF No. 30].  The Court denied that motion on February 28, 2025.  [ECF No. 31].  On June 13, 2025, Defendants filed the instant motion for summary judgment.  [ECF No. 39].

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if "its existence or nonexistence has the potential to change the outcome of the suit," Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995)), and it is genuinely disputed if "the evidence of record permits a rational factfinder to resolve it in favor of either party," id. at 4–5 (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  "[T]he moving party must direct [the Court] to specific evidence in the record that would be admissible at trial," Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015), and show that the

evidence either "negates an essential element of the non-moving party's claim," id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)), or "demonstrate[s] that the non-moving party will be unable to carry its burden of persuasion at trial," id. at 5 (quoting Carmona, 215 F.3d at 132).  Once the moving party has identified such evidence, the burden shifts to the party opposing summary judgment to "demonstrate that a trier of fact could reasonably resolve [each issue on which she would bear the burden of proof at trial] in her favor."  Borges, 605 F.3d at 5 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

The Court reviews "the entire record in the light most hospitable to the party opposing summary judgment," Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), and draws all inferences "in the light most favorable to the party opposing the motion," Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)), but it will not credit "conclusory allegations, improbable inferences, [or] unsupported speculation," Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (quoting Medina-Munoz, 896 F.2d at 8).

## III.    DISCUSSION

In addition to a statutory claim, [Compl. ¶¶ 56–62], Despins raises three common law claims: breach of contract, [id. ¶¶ 35–43]; breach of implied covenant of good faith and fair dealing, [id ¶¶ 44–49], and wrongful termination, [id. ¶¶ 50–55].  The Court begins with Despins's common law claims before turning to his statutory claim.

### A.    Breach of Contract

Though Massachusetts has provided a statutory remedy in the form of Mass. Gen. Laws ch. 149, §§ 148 and 150, discussed infra, common law breach of contract actions remain available to plaintiffs seeking withheld wages.  See Lipsitt v. Plaud, 994 N.E.2d 777, 782–83 (Mass. 2013).  Despins asserts that his employment agreement required Knowledge AI to pay him "pursuant to the [agreement] and consistent with the statutory mandates of the Massachusetts Wage Laws," [Compl. ¶ 38], and that Knowledge AI breached that agreement "by not paying Despins his salary at the agreed Contract wage in a timely manner and by not paying all his wages on termination," [id. ¶ 39].  Despins admits, however, that following his termination, Defendants "paid [him] what he was owed for his wages."  [ECF No. 46 at 13].  Though Despins also seeks triple damages, interest, litigation costs, attorney fees, punitive damages, reinstatement, and forward wages for retaliatory termination, see [Compl. ¶ 43], he has not articulated, and the Court is not aware of, a basis for awarding those other remedies under Massachusetts contract law.  See, e.g., DeRose v. Putnam Mgmt. Co., 496 N.E.2d 428, 432 (Mass. 1986) ("There are no punitive damages in contract.") (first citing Hall v. Paine, 112 N.E. 153 (Mass. 1916); and then citing 5 Arthur L. Corbin, Corbin on Contracts § 1077 (1951)); id. at 431 n.4 ("[T]here can be no recovery for future lost wages . . . based on [a] contract at will."). Accordingly, because Despins concedes that he has already received all damages to which he would be entitled if he prevailed on this claim, the claim is moot.  See Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 58 (1st Cir. 2016) ("[A] [claim] is moot when the court cannot give any effectual relief to the potentially prevailing party." (quoting Am. C.L. Union of Mass. v. U.S. Conf. of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013))); 13B Wright & Miller's Federal Practice & Procedure § 3533.2 (3d ed., Sept. 2025 update) ("A partial settlement moots the

6

settled claims . . . .  Action by the defendant that simply accords all the relief demanded by the plaintiff may have the same effect as settlement. . . .  Individual issues may be mooted in this way . . . even though other matters remain to be resolved.").

### B.    Breach of Implied Covenant of Good Faith and Fair Dealing

Despins claims that Knowledge AI breached the implied covenant of good faith and fair dealing by failing to pay him wages when due, [Compl. ¶ 46], firing him for demanding his right to be paid, [id. ¶ 47], and failing to adhere to the compensation schedule allegedly required by the contract and by Massachusetts wage laws, [id. ¶ 48].  The most that Massachusetts law permits a plaintiff to recover on a claim of breach of implied covenant of good faith and fair dealing, however, is "money that he had fairly earned and legitimately expected," King v. Driscoll (King II), 673 N.E.2d 859, 861 (Mass. 1996) (quoting Kravetz v. Merchs. Distribs., Inc., 440 N.E.2d 1278, 1281 (Mass. 1982)), which excludes "wages and . . . benefits unrelated to past services," id. (quoting Maddaloni v. W. Mass. Bus Lines, Inc., 438 N.E.2d 351, 356 (Mass. 1982)).  Thus, as above, Despins could only recover past lost wages on his breach of covenant theory, and as above, the claim is mooted by Knowledge AI's payment to him of the wages that he earned.

### C.    Wrongful Termination

Despins asserts that he was terminated "[i]n retaliation for insisting on compliance with the Massachusetts wage laws," and that such termination was wrongful as a matter of law. [Compl. ¶ 54].  "[A]n at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy."  King v. Driscoll (King I), 638 N.E.2d 488, 492 (Mass. 1994) (citing Flesner v. Tech. Commc'ns Corp., 575 N.E.2d 1107, 1110–11 (Mass. 1991)).  If "a statute itself . . . provide[s] that an employer may not terminate an employee

for exercising rights conferred by the statute, . . . the common law public policy exception is not called into play." Meehan v. Med. Info. Tech., Inc., 177 N.E. 3d 917, 923 (Mass. 2021) (quoting King I, 638 N.E.2d at 494 n.7); see Mello v. Stop & Shop Cos., 524 N.E.2d 105, 105 (Mass. 1988) ("[N]o common law rule is needed [where] the Legislature has also prescribed a statutory remedy."). As relevant here, Mass. Gen. Laws ch. 149, § 148A, provides a statutory remedy for dismissals arising from an employee's attempt to collect his or her wages. See Mello, 524 N.E.2d at 107 n.2. Accordingly, the Court will not recognize a separate theory of liability at common law where a prohibition and remedy are already provided by Mass. Gen. Laws ch. 149, §§ 148A, 150. See Lipsitt, 994 N.E.2d at 785 n.11; Lohnes v. Darwin Partners, Inc., No. 021299, 2002 WL 31187688, at *3 (Mass. Super. Ct. July 23, 2002) ("With an adequate statutory remedy, there is no need for the common-law tort of wrongful termination to protect this public policy."). Because there is no claim for wrongful termination at common law on these facts, the Court will grant summary judgment to Defendants on the wrongful termination claim.

### D.    Massachusetts Wage Laws

In his complaint, Despins cites chapters 149 and 151 of the Massachusetts General Laws. See [Compl. ¶¶ 56–62]. Those chapters contain numerous provisions related to wages and hours. His memorandum opposing summary judgment specifies that he intends to refer to sections 27, 148, and 148A of chapter 149, and sections 11 and 19 of chapter 151. [ECF No. 46 at 13–19]. Chapter 151, including the particular provisions on which Despins relies, governs minimum wages and overtime pay. See Mass. Gen. Laws ch. 151, §§ 1–2. Despins has not explained how the sections of chapter 151 that he cites apply to his factual allegations, and given that his

$100,000 annual salary does not appear to violate any of those sections, the Court concludes that chapter 151 is inapplicable.

As to his allegations under chapter 149, Despins claims that he was not paid weekly or biweekly and that he was not paid out in full on the day that he was terminated, all in violation of Mass. Gen. Laws ch. 149, § 148; and also that his termination was retaliation for his assertion of his right to receive weekly or biweekly pay, in violation of Mass. Gen. Laws ch. 149, § 148A. [ECF No. 46 at 14–15]. He further argues that he is entitled to an award of attorney fees pursuant to Mass. Gen. Laws ch. 149, § 27. [Id. at 13–14]. Section 27, which governs prevailing wage schedules for professions such as "mechanics and apprentices, teamsters, chauffeurs and laborers," and paid to workers by "contractor[s] or subcontractor[s]," Mass. Gen. Laws ch. 149, § 27, is inapplicable here. The correct statutory section is Mass. Gen. Laws ch. 149, § 150, which applies to all "employee[s] claiming to be aggrieved by a violation of [Mass. Gen. Laws ch.] 149, § 148 or 148A," Fernandes v. Attleboro Housing Auth., 20 N.E.3d 229, 237 (Mass. 2014), grants a private right of action, and provides for treble damages and attorney fees. Mass. Gen. Laws ch. 149, § 150.

### 1.    Timely payment of wages under § 148

Section 148 provides that employees must be paid "weekly or bi-weekly" and that "any employee discharged from . . . employment shall be paid in full on the day of his discharge." Mass. Gen. Laws ch. 149, § 148. The parties do not dispute that Despins was not paid as required by Massachusetts law, but because, as Despins concedes, Defendants "ultimately paid him . . . full triple damages as mandated," [ECF No. 46 at 13], he has already recovered all damages to which he would be entitled under this claim. That said, "[a]n employee . . . who prevails in [an action under section 150] . . . shall also be awarded the costs of the litigation and

9

reasonable attorneys' fees," Mass. Gen. Laws ch. 149, § 150, and Despins seeks those fees and costs, [ECF No. 46 at 13–14].  Defendants contend that he has waived his costs-and-fees claim by failing to raise it earlier.  [ECF No. 40 at 12 n.2].  The Court disagrees.

The record does not suggest that Defendants' various payments to Despins formally settled all of Despins's claims as a matter of law, see [ECF No. 47 ¶¶ 84–88], and Defendants have not articulated why they believe that Despins' failure to raise the issue of costs and attorney fees before those payments were made should constitute a waiver of his right to recover those expenses.  Where damages are resolved by payment of lost wages prior to judgment, the test for whether a plaintiff is a prevailing party entitled to attorney fees is whether the suit "act[ed] as a necessary and important factor in causing the defendant to provide a material portion of the relief demanded in the plaintiff's complaint."  Ferman v. Sturgis Cleaners, Inc., 116 N.E.3d 1196, 1203 (Mass. 2019).  The Court notes that Despins commenced this action on July 2, 2024, [Compl.], and Defendants answered on September 5, 2024, [ECF No. 6], but Defendants only attempted their final payment to Despins for the first time on October 17, 2024, [ECF No. 47 ¶ 84].  Defendants have not provided any evidence, let alone established as a matter of law, that this action was not the catalyst of their decision to pay him treble damages under Massachusetts law.  Accordingly, Despins's claim under § 148 survives summary judgment as to costs and fees and is otherwise mooted by the past payment.  The Court notes that an attorney fee award must be "reasonable," Mass. Gen. Laws ch. 149, § 150, and that Despins's failure to seek attorney fees when Defendants paid him for his damages under § 148 may impact the reasonableness of any further fees incurred after that payment, at least as to his § 148 claim.

### 2.    Retaliation under § 148A

Despins alleges that his termination violated section 148A, which protects employees from being "penalized . . . in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter," Mass. Gen. Laws ch. 149, § 148A.  See [Compl. ¶¶ 61].  Despins must show "(1) that he engaged in conduct that the . . . Massachusetts wage and tips law protect[s] . . . , (2) that [Defendants] subjected [Despins] to an adverse employment action when [they] . . . fired him, and (3) that [they] fired him because of his protected conduct."  Travers v. Flight Servs. & Sys., Inc., 808 F.3d 525, 531 (1st Cir. 2015) (first citing Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir. 2004); and then citing Smith v. Winter Place LLC, 851 N.E.2d 417, 421 (Mass. 2006)).  Defendants argue that Despins "failed to engage in protected conduct before the termination decision was made," [ECF No. 40 at 15], and that he "cannot establish causation," [id. at 16], because Despins was terminated for failure to perform his responsibilities.

Despins has shown at least a genuine dispute of material fact as to whether he engaged in protected activity.  Massachusetts courts interpret the words "any action" broadly, and the provision "certainly includes complaints made to the management of the employer."  Smith, 851 N.E.2d at 421.  Though Defendants seek to characterize Despins's emails as "mere inquiries," [ECF No. 40 at 15], it is clear that Despins's June 12 email to Schreiber, which stated, "I have not been paid yet despite the email telling me that I would," [ECF No. 47 ¶ 28], amounted to a complaint about his wages, at least in light of the numerous earlier emails requesting information about when he would be paid.  That email was sent two days before Defendants claim they decided to terminate Despins, [id. ¶¶ 28, 55], so Defendants' contention that "Despins failed to

engage in protected conduct before the termination decision was made," [ECF No. 40 at 15], is unavailing.

Despins has also demonstrated a genuine dispute of material fact on causation. Though Defendants point to the lack of documentation establishing that Despins did his work, see [ECF No. 40 at 16], they have not disproven, as a matter of law, Despins's contention that he was actually terminated because of his protected activity. A reasonable factfinder could credit the "timing of the adverse action"—in other words, the temporal proximity between Despins's request for his wages and his termination—as sufficient circumstantial evidence to find in Despins's favor on causation. Biewald v. Seven Ten Storage Software, Inc., 113 N.E.3d 881, 889 (Mass. App. Ct. 2018) (citing Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 50 N.E.3d 778, 802–03 (Mass. 2016)). Defendants have thus failed to show that they are entitled to judgment as a matter of law on Despins's retaliatory termination claim.

IV.     **CONCLUSION**

For the foregoing reasons, Despins's breach of contract and breach of covenant claims, [Compl. ¶¶ 35–49], are **DISMISSED AS MOOT**, and Defendants' motion for summary judgment is **GRANTED** as to Despins's wrongful termination claim, [Compl. ¶¶ 50–55], but **DENIED** as to Despins's statutory claims under Massachusetts law, [Compl. ¶¶ 56–62].

        **SO ORDERED.**

March 12, 2026                                          */s/ Allison D. Burroughs*
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE

12